MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ALFREDO CRUZ SANCHEZ, ANTONIO MIGUEL JIMENEZ, DAVID TEXIS TECUAPACHO, LEONARDO CONDE RODRIGUEZ, NICOLAS MENDEZ AVILA, RICARDO TEPI ZENTENO, JORGE ANIBAL GARCIA MEJIA, and MIGUEL ALEX QUIEJ LOPEZ, *individually and on behalf of others similarly situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| | **COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) AND RULE 23 CLASS ACTION** |

*Plaintiffs*,

**ECF Case**

-against-

RAINBOW UMBRELLA, LLC (d/b/a RAINBOW UMBRELLA), PETER SCHATZBERG, and TODD MILLMAN,

*Defendants.*
--------------------------------------------------------X

Plaintiffs Alfredo Cruz Sanchez, Antonio Miguel Jimenez, David Texis Tecuapacho, Leonardo Conde Rodriguez, Nicolas Mendez Avila, Ricardo Tepi Zenteno, Jorge Anibal Garcia Mejia and Miguel Alex Quiej Lopez, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Rainbow Umbrella, LLC (d/b/a Rainbow Umbrella), Peter Schatzberg, and Todd Millman (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs are current employees of defendants Rainbow Umbrella, LLC (d/b/a Rainbow Umbrella), Peter Schatzberg, and Todd Millman (collectively, "Defendants").

2.      Defendants own, operate, or control a Delivery service located at 56 Reade Street, New York, NY 10007 under the name Rainbow Umbrella.

3.      Upon information and belief, Individual Defendants Peter Schatzberg and Todd Millman serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs are current and former employees of Defendants who have been ostensibly employed as delivery workers.

5.      However, the delivery workers have been required to spend a considerable part of their work day performing non-tipped, non-delivery duties including but not limited to, various restaurant duties such as preparing dressings, cutting meats and vegetables, cleaning the refrigerator, the carpets, and the basement, fixing the utensils, picking up merchandise and delivering them to other stores, sweeping, mopping, washing the kitchen tarps, deconstructing and tying up boxes, unloading products and taking them to the basement, buying products at the grocery store, taking out the garbage, and stocking items,  (hereafter the "non-tipped, non-delivery duties").

6.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants without appropriate minimum wage compensation for the hours that they have worked each week.

7.      Defendants have employed and have accounted for Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties have required a significant amount of time spent in non-tipped, non-delivery duties.

8.      Regardless, at all times Defendants have paid Plaintiffs at the tip-credit rate. Furthermore, under state law, Defendants were not entitled to take a tip credit because Plaintiffs'

non-tipped duties have exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

9.      Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them as delivery workers instead of non-tipped employees.

10.      Furthermore, defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

11.      At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage compensation required by federal and state law and regulations.

12.      Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

13.      At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs to work without providing the minimum wage compensation required by federal and state law and regulations.

14.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.      Plaintiffs now bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure and seek certification of this action as a collective action on behalf of

themselves individually, and of all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a delivery service located in this district.  Further, Plaintiffs have been employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

18.     Plaintiff Alfredo Cruz Sanchez ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in New York County, New York.  Plaintiff Cruz has been employed by Defendants from approximately November 2016 until the present date.

19.     Plaintiff Antonio Miguel Jimenez ("Plaintiff Miguel" or "Mr. Miguel") is an adult individual residing in Kings County, New York.  Plaintiff Miguel has been employed by Defendants from approximately September 4, 2017 until the present date.

20.     Plaintiff David Texis Tecuapacho ("Plaintiff Texis" or "Mr. Texis") is an adult individual residing in Kings County, New York.  Plaintiff Texis has been employed by Defendants from approximately March 2017 until the present date.

- 4 -

21.     Plaintiff Leonardo Conde Rodriguez ("Plaintiff Conde" or "Mr. Conde") is an adult individual residing in Kings County, New York.  Plaintiff Conde has been employed by Defendants from approximately March 16, 2017 until the present date.

22.     Plaintiff Nicolas Mendez Avila ("Plaintiff Mendez" or "Mr.  Mendez") is an adult individual residing in Queens County, New York.  Plaintiff Mendez has been employed by Defendants from approximately April 20, 2017 until the present date.

23.     Plaintiff Ricardo Tepi Zenteno ("Plaintiff Tepi" or "Mr. Tepi") is an adult individual residing in Queens County, New York.  Plaintiff Tepi has been employed by defendants from approximately September 2016 until the present date.

24.     Plaintiff Jorge Anibal Garcia Mejia ("Plaintiff Anibal" or "Mr. Anibal") is an adult individual residing in Bronx County, New York.  Plaintiff Anibal was employed by defendants from approximately March 2017 until on or about October 2017.

25.     Plaintiff Miguel Alex Quiej Lopez ("Plaintiff Quiej" or "Mr. Quiej") is an adult individual residing in Bronx County, New York. Plaintiff Quiej has been employed by Defendants from approximately February 10, 2017 until the present date.

*Defendants*

26.     At all relevant times, Defendants own, operate, or control a Delivery service located at 56 Reade Street, New York, NY 10007 under the name "Rainbow Umbrella".

27.     Upon information and belief, Rainbow Umbrella, LLC (d/b/a Rainbow Umbrella), Defendant Corporation, is a domestic corporation organized and existing under the laws of the State of New York.

28.     Upon information and belief, Defendant Corporation maintains its principal place of business at 56 Reade Street, New York, NY 10007.

29.     Defendant Peter Schatzberg is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Peter Schatzberg is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant Peter Schatzberg possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, and establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Todd Millman is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Todd Millman is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant Todd Millman possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation.  He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

31.     Defendants operate a delivery service located in the Tribeca section of Manhattan in New York City.

32.     Individual defendants, Peter Schatzberg and Todd Millman possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

33.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

34.     Each Defendant possesses and possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

35.     Defendants have jointly employed Plaintiffs (and all similarly situated employees) and are or were Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

36.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

37.     Upon information and belief, individual defendants Peter Schatzberg and Todd Millman, operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)   operating Defendant Corporation for their own benefit and maintaining control over it as a closed corporation,

f)   intermingling assets and debts of their own with Defendant Corporation,

g)   diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)   other actions evincing a failure to adhere to the corporate form.

38.   At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants have had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

39.   In each year from 2016 to the present, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40.   In addition, upon information and belief, Defendants and/or their enterprise are directly engaged in interstate commerce. As an example, numerous items that are used in the delivery service on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

41.   Plaintiffs are current employees of Defendants who have been ostensibly employed as delivery workers. However, they have spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

42.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alfredo Cruz Sanchez*

43.    Plaintiff Cruz has been employed by Defendants from approximately November 2016 until the present date.

44.    Defendants have ostensibly employed Plaintiff Cruz as a delivery worker.

45.    However, Plaintiff Cruz also has been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

46.    Although Plaintiff Cruz ostensibly has been employed as a delivery worker, he has spent over 20% of each workday performing non-delivery work.

47.    Plaintiff Cruz regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

48.    Plaintiff Cruz's work duties have required neither discretion nor independent judgment.

49.    From approximately November 2016 until the present date, Plaintiff Cruz has worked from approximately 11:00 a.m. until on or about 8:00 p.m. Mondays and Tuesdays (typically 18 hours per week).

50.    Throughout his employment with defendants, Plaintiff Cruz has been paid his wages by check.

51.    From approximately November 2016 until the present date, Plaintiff Cruz has been paid an hourly rate of $9.15.

52.    Plaintiff Cruz has never been notified by Defendants that his tips are being included as an offset for wages.

53.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Cruz's wages.

54.     In addition, Defendants, have withheld a portion of the tips clients pay Plaintiff Cruz. Specifically, Defendants have pocketed about 5% to 10% of the tips from his delivery orders.

55.     No notifications, either in the form of posted notices or other means, have ever been given to Plaintiff Cruz regarding wages under the FLSA and NYLL.

56.     Furthermore, Defendants have not provided Plaintiff Cruz with a statement of wages with each payment of wages, as required by NYLL 195(3).

57.     Defendants have not given any notice to Plaintiff Cruz, in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

58.     Defendants have required Plaintiff Cruz to purchase "tools of the trade" with his own funds—including one bicycle, a helmet, lock and chain, lights, a rain coat, and bike maintenance.

*Plaintiff Antonio Miguel Jimenez*

59.     Plaintiff Miguel has been employed by Defendants from approximately September 4, 2017 until the present date.

60.     Defendants have ostensibly employed Plaintiff Miguel as a delivery worker.

61.     However, Plaintiff Miguel has also been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

62.     Although Plaintiff Miguel ostensibly has been employed as a delivery worker, he has spent over 20% of each workday performing non-delivery work throughout his employment with Defendants.

63.     Plaintiff Miguel regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

64.     Plaintiff Miguel's work duties have required neither discretion nor independent judgment.

65.     From approximately September 4, 2017 until on or about October 13, 2017, Plaintiff Miguel worked from approximately 11:00 a.m. until on or about 3:00 p.m., Mondays through Fridays (typically 20 hours per week).

66.     From approximately October 13, 2017 until the present date, Plaintiff Miguel has worked from approximately 11:00 a.m. until on or about 2:00 p.m. Mondays through Thursdays (typically 12 hours per week).

67.     Throughout his employment with defendants, Plaintiff Miguel has been paid his wages by check.

68.     From approximately September 4, 2017 until the present date, Plaintiff Miguel has been paid an hourly rate of $9.15.

69.     However, for Plaintiff Miguel's first week of employment, Defendants never compensated him for the hours he worked.

70.     Defendants never have granted Plaintiff Miguel any break or meal periods of any length.

71.     Plaintiff Miguel has never been notified by Defendants that his tips are being included as an offset for wages.

72.     Defendants do not account for these tips in any daily or weekly accounting of Plaintiff Miguel's wages.

73.     In addition, Defendants, have withheld a portion of the tips clients pay Plaintiff Miguel. Specifically, Defendants have pocketed about 5% to 10% of the tips from his delivery orders.

74.     Furthermore, Defendants have not provided Plaintiff Miguel with a statement of wages with each payment of wages, as required by NYLL 195(3).

75.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Miguel regarding wages under the FLSA and NYLL.

76.     Defendants have not given any notice to Plaintiff Miguel, in English and in Spanish (Plaintiff Miguel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

77.     Defendants have required Plaintiff Miguel to purchase "tools of the trade" with his own funds—including one bicycle, locks, a vest, a helmet, and bike maintenance.

*Plaintiff David Texis Tecuapacho*

78.      Plaintiff Texis has been employed by Defendants from approximately March 2017 until the present date.

79.     Defendants have ostensibly employed Plaintiff Texis as a delivery worker.

80.     However, Plaintiff Texis has also been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

81.     Although Plaintiff Texis ostensibly has been employed as a delivery worker, he has spent over 20% of each workday performing non-delivery work throughout his employment with Defendants.

82.     Plaintiff Texis regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

83.     Plaintiff Texis's work duties have required neither discretion nor independent judgment.

84.     From approximately March 2017 until on or about July 2017, Plaintiff Texis

- 12 -

worked from approximately 11:00 a.m. until on or about 8:00 p.m. Mondays through Thursdays and from approximately 11:00 a.m. until on or about 2:00 p.m. Fridays (typically 39 hours per week).

85.     From approximately July 2017 until on or about October 2017, Plaintiff Texis worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays, Wednesdays, and Thursdays and from approximately 11:00 a.m. until on or about 2:00 p.m. Fridays (typically 15 hours per week).

86.     From approximately October 2017 until the present date, Plaintiff Texis has worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays and Thursdays, from approximately 11:00 a.m. until on or about 8:00 p.m. Wednesdays, and from approximately 11:00 a.m. until on or about 2:00 p.m. Fridays (typically 20 hours per week).

87.     Throughout his employment with defendants, Plaintiff Texis has been paid his wages by check.

88.     From approximately March 2017 until the present date, Plaintiff Texis has been paid an hourly rate of $9.15.

89.     Plaintiff Texis has never been notified by Defendants that his tips are being included as an offset for wages.

90.     Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Texis's wages.

91.     In addition, Defendants, have withheld a portion of the tips clients pay Plaintiff Texis. Specifically, Defendants have pocketed about 5% to 10% of the tips from his delivery orders.

92.     No notifications, either in the form of posted notices or other means, have been

given to Plaintiff Texis regarding wages under the FLSA and NYLL.

93.     Furthermore, Defendants never have provided Plaintiff Texis with a statement of wages with each payment of wages, as required by NYLL 195(3).

94.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Texis regarding wages under the FLSA and NYLL.

95.     Defendants have not given any notice to Plaintiff Texis, in English and in Spanish (Plaintiff Texis's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

96.     Defendants have required Plaintiff Texis to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, a vest, and a bike lock.

*Plaintiff Leonardo Conde Rodriguez*

97.     Plaintiff Conde has been employed by Defendants from approximately March 16, 2017 until the present date.

98.     Defendants have ostensibly employed Plaintiff Conde as a delivery worker.

99.     However, Plaintiff Conde has also been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

100.    Although Plaintiff Conde ostensibly has been employed as a delivery worker, he has spent over 20% of each workday performing non-delivery work throughout his employment with Defendants.

101.    Plaintiff Conde regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

102.    Plaintiff Conde's work duties have required neither discretion nor independent judgment.

103.    From approximately March 16, 2017 until the present date, Plaintiff Conde has worked from approximately 10:00 a.m. until on or about 3:30 p.m. Mondays through Fridays (typically 22 hours per week).

104.    Throughout his employment with defendants, Plaintiff Conde has been paid his wages by check.

105.    From approximately March 16, 2017 until the present date, Plaintiff Conde has been paid an hourly rate of $9.15.

106.    Defendants never have granted Plaintiff Conde any break or meal periods of any length.

107.    Plaintiff Conde has never been notified by Defendants that his tips are being included as an offset for wages.

108.    Defendants do not account for these tips in any daily or weekly accounting of Plaintiff Conde's wages.

109.    In addition, Defendants, have withheld a portion of the tips clients pay Plaintiff Conde. Specifically, Defendants have pocketed about 5% to 10% of the tips from his delivery orders.

110.    Furthermore, Defendants have not provided Plaintiff Conde with a statement of wages with each payment of wages, as required by NYLL 195(3).

111.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Conde regarding wages under the FLSA and NYLL.

112.    Defendants have not given any notice to Plaintiff Conde, in English and in Spanish (Plaintiff Conde's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Nicolas Mendez Avila*

113.    Plaintiff Mendez has been employed by Defendants from approximately April 20, 2017 until the present date.

114.    Defendants have ostensibly employed Plaintiff Mendez as a delivery worker.

115.    However, Plaintiff Mendez has also been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

116.    Although Plaintiff Mendez ostensibly has been employed as a delivery worker, he has spent over 20% of each workday performing non-delivery work throughout his employment with Defendants.

117.    Plaintiff Mendez regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

118.    Plaintiff Mendez's work duties have required neither discretion nor independent judgment.

119.    From approximately April  20, 2017 until the present date, Plaintiff Mendez has worked from approximately 11:00 a.m. until on or about 4:00 p.m. Mondays through Thursdays and from approximately 11:00 a.m. until on or about 2:00 p.m. Fridays (typically 23 hours per week).

120.    Throughout his employment with defendants, Plaintiff Mendez has been paid his wages by check.

121.    From approximately April 2017 until the present date, Plaintiff Mendez has been paid an hourly rate of $9.15.

122.    Defendants never have granted Plaintiff Mendez any break or meal periods of any length.

123.    Plaintiff Mendez has never been notified by Defendants that his tips are being included as an offset for wages.

124.    Defendants do not account for these tips in any daily or weekly accounting of Plaintiff Mendez's wages.

125.    In addition, Defendants, have withheld a portion of the tips clients pay Plaintiff Mendez. Specifically, Defendants have pocketed about 5% to 10% of the tips from his delivery orders.

126.    Furthermore, Defendants have not provided Plaintiff Mendez with a statement of wages with each payment of wages, as required by NYLL 195(3).

127.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Mendez regarding wages under the FLSA and NYLL.

128.    Defendants have not given any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

129.    Defendants have required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including one bicycle and bike maintenance.

*Plaintiff Ricardo Tepi Zenteno*

130.    Plaintiff Tepi has been employed by Defendants from approximately September 2016 until the present date.

131.    Defendants ostensibly have employed Plaintiff Tepi as a delivery worker.

132.    However, Plaintiff Tepi has also been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

133.    Although Plaintiff Tepi ostensibly has been employed as a delivery worker, he has

spent over 20% of each workday performing non-delivery work throughout his employment with Defendants.

134.    Plaintiff Tepi regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

135.    Plaintiff Tepi's work duties have required neither discretion nor independent judgment.

136.    From approximately September 2016 until on or about May 2017, Plaintiff Tepi worked from approximately 11:00 a.m. until on or about 8:00 p.m. Mondays through Thursdays and from approximately 11:00 a.m. until on or about 2:00 p.m. Fridays (typically 39 hours per week).

137.    From approximately May 2017 until the present date, Plaintiff Tepi has worked from approximately 10:30 a.m. until on or about 3:00 p.m. Mondays through Thursdays and from approximately 10:30 a.m. until on or about 2:00 p.m. Fridays (typically 21.5 hours per week)

138.    Throughout his employment with defendants, Plaintiff Tepi has been paid his wages by check.

139.    From approximately September 2016 until on or about January 2017, Plaintiff Tepi was paid an hourly rate of $7.15 per hour.

140.    From approximately January 2017 until the present date, Plaintiff Tepi has been paid an hourly rate of $9.15.

141.    Plaintiff Tepi has never been notified by Defendants that his tips are being included as an offset for wages.

142.    Defendants do not account for these tips in any daily or weekly accounting of Plaintiff Tepi's wages.

143.    In addition, Defendants, have withheld a portion of the tips clients pay Plaintiff Tepi. Specifically, Defendants pocketed about 5% to 10% of the tips from his delivery orders.

144.    Furthermore, Defendants have not provided Plaintiff Tepi with a statement of wages with each payment of wages, as required by NYLL 195(3).

145.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Tepi regarding wages under the FLSA and NYLL.

146.    Defendants have not given any notice to Plaintiff Tepi, in English and in Spanish (Plaintiff Tepi's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

147.    Defendants have required Plaintiff Tepi to purchase "tools of the trade" with his own funds—including one bicycle, a helmet, a delivery bag, and a lock and chain.

*Plaintiff Jorge Anibal Garcia Mejia*

148.    Plaintiff Anibal was employed by Defendants from approximately March 2017 until on or about October 2017.

149.    Defendants ostensibly employed Plaintiff Anibal as a delivery worker. However, Plaintiff Anibal also was required to perform the non-delivery non-tip duties described above.

150.    Although Plaintiff Anibal ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

151.    Plaintiff Anibal regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

152.    Plaintiff Anibal's work duties required neither discretion nor independent judgment.

153.     From approximately March 2017 until on or about August 2017, Plaintiff Anibal worked from approximately 3:00 p.m. until on or about 11:00 p.m. Mondays through Thursdays and from approximately 11:00 a.m. until on or about 2:00 p.m. for approximately eight Fridays during this time period (typically 32 to 35 hours per week).

154.     From approximately August 2017 until on or about October 2017, Plaintiff Anibal worked from approximately 5:00 p.m. until on or about 9:40 p.m. three days a week and from approximately 5:00 p.m. until on or about 9:00 p.m. one day a week (typically 18 hours per week).

155.     Throughout his entire employment with Defendants, Plaintiff Anibal was paid his wages by check.

156.     From approximately March 2017 until on or about October 2017, Plaintiff Anibal was paid $9.15 per hour.

157.     Defendants never granted Plaintiff Anibal a meal break or rest period of any kind.

158.     Plaintiff Anibal was never notified by Defendants that his tips would be included as an offset for wages.

159.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Anibal's wages.

160.     In addition, Defendants, withheld a portion of the tips clients pay Plaintiff Anibal. Specifically, Defendants pocketed about 5% to 10% of the tips from his delivery orders.

161.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Anibal regarding wages under the FLSA and NYLL.

162.     Defendants did not give any notice to Plaintiff Anibal in English and in Spanish (Plaintiff Anibal's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

163.     Defendants required Plaintiff Anibal to purchase "tools of the trade" with his own funds—including a bicycle, four pairs of tires, bicycle maintenance, a helmet, a lock, two vests, two lights, a jacket, and a pair of pants.

*Plaintiff Miguel Alex Quiej Lopez*

164.     Plaintiff Quiej has been employed by Defendants from approximately February 10, 2017 until the present date.

165.     Defendants ostensibly have employed Plaintiff Quiej as a delivery worker.

166.     However, Plaintiff Quiej has also been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

167.     Although Plaintiff Quiej ostensibly has been employed as a delivery worker, he has spent over 20% of each workday performing non-delivery work throughout his employment with Defendants.

168.     Plaintiff Quiej regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

169.     Plaintiff Quiej's work duties have required neither discretion nor independent judgment.

170.     From approximately February 10, 2017 until on or about September 2017, Plaintiff Quiej worked from approximately 10:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 25 hours per week).

171.     From approximately September 2017 until the present date, Plaintiff Quiej has worked from approximately 4:00 p.m. until on or about 9:30 p.m. two days per week and from approximately 4:00 p.m. until on or about 10:00 p.m. or 10:10 p.m. three days per week (typically 29 to 29.5 hours per week)

172.   Throughout his employment with defendants, Plaintiff Quiej has been paid his wages by check.

173.   From approximately February 10, 2017 until the present date, Plaintiff Quiej has been paid an hourly rate of $9.15.

174.   Plaintiff Quiej has never been notified by Defendants that his tips are being included as an offset for wages.

175.   Defendants do not account for these tips in any daily or weekly accounting of Plaintiff Quiej's wages.

176.   In addition, Defendants, have withheld a portion of the tips clients pay Plaintiff Quiej. Specifically, Defendants pocketed about 5% to 10% of the tips from his delivery orders.

177.   Furthermore, Defendants have not provided Plaintiff Quiej with a statement of wages with each payment of wages, as required by NYLL 195(3).

178.   No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Quiej regarding wages under the FLSA and NYLL.

179.   Defendants have not given any notice to Plaintiff Quiej, in English and in Spanish (Plaintiff Quiej's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

180.   Defendants have required Plaintiff Quiej to purchase "tools of the trade" with his own funds—including one bicycle, four pairs of tires, one helmet, one lock, three sets of lights and bicycle's repairs and maintenance.

*Defendants' General Employment Practices*

181.   At all times relevant to this Complaint, Defendants have regularly required Plaintiffs to work without paying them the proper minimum wages.

182.    Defendants have maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work without paying them appropriate minimum wage, as required by federal and state laws.

183.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

184.    Defendants have unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

185.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

186.    Defendants have required Plaintiffs to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers.

187.    Plaintiffs have been employed ostensibly as tipped employees by Defendants, although their actual duties have included a significant amount of time spent doing non-tipped work.

188.    Plaintiffs have been paid at the lowered tip-credited rate by Defendants.  However, under state law, Defendants have not been entitled to a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday (12 N.Y. C.R.R. § 146).

189.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which

tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

190.    Plaintiffs' duties have not been incidental to their occupation as delivery workers, but instead have constituted entirely unrelated general restaurant work with duties including the non-tipped, non-delivery duties described above.

191.    In violation of federal and state law, as discussed above, Defendants have classified these Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

192.    Defendants have failed to inform Plaintiffs who have received tips that Defendants intend to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

193.    Defendants have failed to inform Plaintiffs that their tips are being credited towards the payment of the minimum wage.

194.    At no time have Defendants informed Plaintiffs that they have reduced their hourly wage by a tip allowance.

195.    Defendants have failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

196.    All Plaintiffs have been paid their wages by check.

197.    Defendants have employed Plaintiffs as delivery workers and have required them to provide their own locks, chains, helmets, and bicycles, and have refused to compensate them or reimburse them for these expenses.

198.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy

of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

199.    Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

200.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

201.    Defendants have failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

202.    Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a

mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

203.   Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period") "FLSA and Rule 23 class Period").

204.   At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

205.   The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

206.   Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

207.   Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

208.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

209.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e)  Whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h)  What are the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

210.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment

- 27 -

of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

211.     The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

212.     The common questions of law and fact predominate over questions affecting only individual members.

213.     A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

214.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## **FIRST CAUSE OF ACTION**

### **(VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)**

215.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

216.     At all times relevant to this action, Defendants have been Plaintiffs' employers (and employers of the putative FLSA and Rule 23 class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

217.    Defendants have failed to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

218.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate has been willful within the meaning of 29 U.S.C. § 255(a).

219.     Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

220.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

221.    At all times relevant to this action, Defendants have been Plaintiffs' (and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants have had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

222.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs and the FLSA and Rule 23 class members less than the minimum wage.

223.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members the minimum wage has been willful within the meaning of N.Y. Lab. Law § 663.

224.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## (RECOVERY OF EQUIPMENT COSTS)

225.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

226.    Defendants have required Plaintiffs and the FLSA and Rule 23 class members to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

227.    Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### (UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW)

228.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

229.    At all relevant times, Defendants have been Plaintiffs' (and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

230.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

231.    Defendants have unlawfully misappropriated a portion of Plaintiffs' (and the FLSA and Rule 23 class members') tips that were received from customers.

232.    Defendants have knowingly and intentionally retained a portion of Plaintiffs' (and the FLSA and Rule 23 class members ') tips in violations of the NYLL and supporting Department of Labor Regulations.

233.     Plaintiffs and the FLSA and Rule 23 class members have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)     Declaring that Defendants' violation of the provisions of the FLSA have been willful as to Plaintiffs and the FLSA and Rule 23 class members;

(d)     Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(e)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(f)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 class

members;

(g)     Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum wages, and for any improper deductions or credits taken against wages under the NYLL, as applicable;

(h)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(i)     Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(j)      Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorneys' fees;

(k)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(l)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
        November 20, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     _/s/ Michael Faillace_____
        Michael Faillace [MF-8436]
        MICHAEL FAILLACE & ASSOCIATES, P.C.

Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
_____

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 20, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **David Texis Tecuapacho**

                                   Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                          20 de octubre de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
——————

Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

October 26, 2017

BY HAND


TO:    Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**


Name/ Nombre:                          Alfredo Cruz Sanchez


Legal Representative/ Representante          Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                          October 26, 2017

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 20, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Ricardo Tepi Zenteno

                                            Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                            *Ricaido Tep.*

Signature / Firma:

                                                 20 de octubre de 2017

Date / Fecha:

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

November 17, 2017

BY HAND


TO:     Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Miguel Alex Quiej Lopez

                                   Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

                                   17 de noviembre de 2017

Date / Fecha:


*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

October 20, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                       Nicolas Mendez Avila

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                *Nicolas Mendez*

Date / Fecha:                    October 20, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

#### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 20, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy
mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          Leonardo Conde Rodriguez

Legal Representative/ Representante          Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                          October 20, 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 15, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                                    Jorge Anibal Garcia Mejia

                                                Michael Faillace & Associates, P.C.
Legal Representative/ Representante
Legal:

Signature/ Firma:

Date/ Fecha:                                    November 15, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 20, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Antonio Miguel Jimenez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       20 de octubre de 2017

*Certified as a minority-owned business in the State of New York*